THE STATE *v.* NUDD.

23  327
68  597

A public highway may be created by a long use of land by the public, for the purposes of a highway.

But the way, to become public, must be used in such a manner as to show that the public accommodation requires the way, and that it is the intention of the owner of the land to dedicate it to the public, for that purpose.

Where the alleged highway was described as being between the land of N., and the beach of the Atlantic ocean, on the northerly side of H., and extending

to the easterly point of H., and "the evidence tended to show that a number of teams, more or less," passed along the alleged way, "some of them going to the point of H., and in two or three instances around it," for the purpose of gathering "rock weed, principally, but sometimes sea weed and drift wood," and that this occurred every year for more than twenty successive years, mostly in the fall and winter; that wheel ruts were distinguishable along the westerly end of the way, for a good portion of the time, but were sometimes covered up with the sand, and that, towards the point, the bank in some places was washed away from year to year, and the travel accordingly changed, keeping as near the bank as possible, but it did not appear that the way was ever laid out as a highway, or fenced, or repaired, nor that the town in which it was situated had ever done any act to recognize it; it was *held*, that the evidence was insufficient to establish the existence of the alleged public highway.

INFORMATION, filed by the solicitor of this county at the September term of the court of common pleas, 1849, against the respondent, for a common nuisance, in obstructing a certain highway in Hampton, in this county, by drawing a large quantity of stones into the same. The highway was described in the information as follows : " A certain common and public highway in the town of Hampton, in said county of Rockingham, leading from the beach road, so called, in Hampton, in said county, at a place near the Logs, so called, between land of David Nudd, and the beach of the Atlantic ocean, southeasterly to the northerly side of Great Boar's Head, so called, in said Hampton, and along the northerly side of said Great Boar's Head, to the easterly point of said Great Boar's Head, which said highway was, and is, two rods in width, and eighty rods in length."

It appeared that the obstructions were placed in the alleged highway by Nudd, in 1846, for the alleged purpose of preventing the water from breaking upon and washing away his land. It did not appear, however, that the land had ever been washed away, where the obstructions were placed. The obstructions were placed opposite to, and easterly of, the " *Large Rock*," so called, and were such as to make it almost, if not quite, impossible for teams to pass there.

The " Logs " is a portion of the beach fifteen or twenty rods in length, lying westerly of the Large Rock, sixteen degrees easterly to a point near it. Seaweed collects there in large quan-

tities. Beyond the Large Rock, is rock weed, some sea weed, and drift wood occasionally. The evidence tended to show that a large number of teams are in the habit of taking sea weed at the Logs every year, principally however in the fall, winter, and spring. One witness testified, that he saw seventy-two teams there at one time. Such has been the case for more than twenty successive years, immediately preceding the time when the obstructions were caused. .

The evidence, also, tended to show that a number of teams, more or less, passed beyond the Rock, easterly, along where the obstructions were placed, and so on towards the point of Great Boar's Head, some of them going to the point, and in two or three instances, around it. These teams gathered rock weed principally, but sometimes sea weed and drift wood. This was the fact every year, for more than twenty successive years immediately preceding the time when said Nudd placed the obstructions in the alleged highway, though mostly in the spring and fall. Wheel ruts were distinguishable along by the rock, for a good portion of the time — but were sometimes covered up by the sand.

It did not appear that the alleged highway, was ever laid out as a highway, or was ever fenced or repaired, or that the town had ever done any act recognizing it as a highway.

It further appeared, that it has been customary to pass, and re-pass, for the purposes of getting sea-weed, freely over all parts of the space, along by the Granite House, and the Fish House, places lying westerly of the Large Rock, and at the Logs. Beyond the Rock, and towards the point, the beach is narrower — the bank in some places washed away from year to year, and the travel accordingly changed, keeping always as near the bank as possible.

The counsel for Nudd moved to quash the information, "because the alleged road, not being either fenced, or traceable by the prints of travel, ought to have been distinctly described by monuments, and points of the compass, in order to make it possible to run out and locate the same — and because it appeared that a road two rods in width might be run out in different places

within the location described for the alleged highway, in the information — and because it appeared that the travel on the same, had not been confined to any two rods, but had extended freely over all the open space, along the sea shore."

The court overruled the motion.

A verdict was taken, by consent, for the State ; on which judgment was to be entered, or the verdict set aside and judgment entered for the respondent, or a new trial granted as the opinion of the court should be upon the whole case.

*Hatch,* solicitor, for the State.

This is an information for obstructing a highway. The case recites an abstract of the evidence, which was offered to show the existence of the highway ; and the fact of the obstruction is found affirmatively by the verdict.

I. The first objection taken is to the form of the information, " because the alleged road is not distinctly described by monuments and points of compass," and because a space more than two rods wide had been used by the public as a highway.

The highway is described so distinctly in the information, that the defendant must have known what he had to answer to, and the jury must have understood to what the evidence applied. *State* v. *Follet,* 6 N. H. Rep., 53.

There is nothing ambiguous in the description, nor could any other highway, be mistaken for the highway intended. And the *description* of the highway does not embrace the essence of the offence ; the charge is that a highway was obstructed by the defendant, and the description is sufficient, if it enable the defendant to know where the alleged offence was committed. The alleged way commenced at a well known highway, " at a place called the Logs." It was shown that the portion of the sea-shore called the Logs, is fifteen or twenty rods long. But it also appears, that the highway obstructed, runs along the whole of that space, and touches every part of it.

The evidence tended to show, that at one place the alleged highway as used, was more than two rods wide. But it is in no wise material to the case, or to the defence, that the information

assigns to the road a width less than it really has.   Every part of a highway, is a highway, and if the defendant has obstructed a portion of the road two rods wide, he is to be adjudged guilty of the nuisance.   So far as the road is limited below its true dimensions, the limitation benefits the defendant.

But both these objections were distinctly settled by the superior court in this county, at the July term, 1846, by *Parker*, C. J. in the case of *The State* v. *Nathaniel Bartlett*.   That was an indictment for obstructing a public highway in Newcastle, and the road was described as follows : " beginning at a highway leading from Newcastle village to Fort Constitution, and running thence along the beach, above and near high-water mark, one fourth of a mile to the Atlantic Ocean."   Exception to the description was taken by the counsel for the defendant, but after argument in the superior court, judgment was rendered on the verdict.

See also *State* v. *Gilmanton*, 14 N. H. Rep., 467.

II.   The remaining objection is, that the evidence was not sufficient to show the existence of a highway as alleged.

The case of *State* v. *Bartlett*, already cited is almost precisely co-incident with this, and must completely settle it.   The following is an extract from that case : " Upon the trial it appeared, that for more than fifty years there has been a travelled path from the highway leading from Newcastle village to Fort Constitution, commencing near the Fort and running across a piece of low meadow land which has been unoccupied until within a year or two, and then by lands severally belonging to four individuals passing to the beach, which extends southerly to Little Harbor.   The distance between the place where it leaves the highway leading to the Fort, and the beach is nearly half a mile. This path has been used during all that period by the owners of those lands for the purpose of passing with their teams, to and from their fields, and three of them have no other means of access to those fields.   It has also been used by pleasure carriages, and persons resorting to the beach, and has been much used for that purpose, but there is no other highway than that leading to the Fort which connects with this travelled way, nor is there any

other passage way to the beach, so that persons who travel over it to the beach, or their fields are obliged to return the same way, with one exception before referred to.

"The travel has uniformly passed along the same track, which is three of four rods from the water at common tides. In very high tides the meadow has been overflowed. There is no house upon the route. The town has never made any repairs upon it. It did not appear that it had ever been laid out by the selectmen as a highway."

The court held this sufficient evidence of the existence of the higway ; and *Parker*, C. J., cited *Galatin* v. *Gardner*, 7 Johns. Rep., 105 ; 2 Starkie's Ev., 666 ; 5 Taunton Rep., 126, and *Rugby Charity* v. *Merryweather*, 11 East., 376, n., to support his position that the circumstance that it was not a thoroughfare, did not prevent the road from being a highway. And the court finally declared that he road had become a highway by prescription.

See also, *State* v. *Campton*, 2 N. H. Rep., 513 ; *Pritchard* v. *Atkinson*, 4 N. H. Rep., 9 ; *Rex* v. *Wright*, 3 B. & A., 681.

The fact that the road was generally used for certain purposes, viz : the hauling of rock-weed, sea-weed and drift-wood, does not affect the question, whether it is a highway. Every road is used more especially for some purposes than for others, and it is hardly possible, if it be competent, for the court to declare a rule by which use for one purpose, or class of purposes, shall constitute a highway, and like use for other purposes, shall not.

It has within a few years been decided by this court, in reference to this very locality, that the land on the sea-shore below high-water mark, is not individual property, but belongs to the State, or to the citizens thereof. But if the highway now set up does not exist, this public property is inaccessible.

There is nothing in the case which limits the use of the highway which the defendant has obstructed, to inhabitants of Hampton ; and it is believed that the distinction which is made in Massachusetts, between highways, and town ways, does not exist in this State.

*Stickney & Tuck*, for the respondent.

It was undisputed on the trial, that there was no one place where the travel had exclusively been, and there were no tracks of wheels except at the Rock, and there, only occasionally. It has always been denied, that there was any proof showing that any highway had ever existed, as alleged.

We think the information ought to have been quashed on the defendant's motion, as set forth in the case, and for the causes therein given. And we solicit the particular attention of the court to this motion. If a road be not fenced, or traceable by clear marks of travel, the information must give a description by monuments and points of the compass.

If we grant that the information can be held good, still the case does not show that a highway exists, agreeably to any of the methods of creating highways, known in this State. In the case of *State* v. *New-Boston*, 11 N. H. Rep., 409, the present Chief Justice says, that " we are not aware that more than four modes of creating public highways have ever been recognized in this State." The statutes point out two of these modes ; firstly by authority of the selectmen of the several towns ; and secondly, by the court of common pleas, acting through a committee, or board of road commissioners." The third is by charters to individuals, to build turnpikes ; and " *the fourth is by long use of land by the public, for the purposes of a highway*, or dedication of the land by the owners, to the use of the public."

There is no pretence that this is a highway, unless it has been made so, " by long use of the land by the public, for the purposes of a highway."

" The obstructions," (in the language of the case,) "were placed opposite to, and easterly of "the Large Rock." Our offence is the placing obstructions in this place. Now let us cite from the case, what proof there is, of a public highway, " opposite to, and easterly," of the Rock.

The case further states, that "the evidence tended to show that a number of teams, more or less, passed beyond the Rock along where the obstructions were placed, and so on, towards the point, some of them going to the point, and in two or three in-

stances around it." It would be preposterous, to allege that such loose evidence as this, could establish highways when there was not travel enough to make visible tracks.

In the case of *Barker* v. *Clark*, 4 N. H. Rep., 383, there is some law laid down by the late Ch. J. *Richardson*, in his decisions, precisely applicable to this case. The controversy in that case, was about a way, which was claimed to be a public highway.

If the doctrine there laid down, be the law at the present time, (and there can be no doubt of it, we think,) it is decisive of the case under consideration. Almost every requisite, according to the authority cited, is negatived, instead of being established by the testimony and circumstances set forth in this case. There is no pretence, that the alleged way was ever opened with the purpose of making it a highway, no suggestion is made that the public accommodation requires it to be a highway, or that the public ever travelled over it, nor that it was ever the intention of Mr. Nudd to dedicate it to the public.

The case does not show any use whatever by the public. It was only those persons who wanted " sea-weed, rock-weed, and drift-wood," that ever had occasion to go there, or did go there at all. The purposes for which this alleged road has been used, limit the possession that is acquired. It has been used only for specific purposes, by a limited number of persons; yet the counsel for the State contend, that a right has been acquired by the whole public, to use it for all purposes whatsoever. People wanting sea-weed have gone to the Logs, and will go there hereafter, but it never entered into the heads of any of the people of the town, that " the Logs " was a public highway. The people might claim a license or easement there, of some kind, to enable them to take and carry away sea-weed, &c., but their alleged rights bore no resemblance to the rights of the public in highways. They went to the " Logs " to work, collecting sea-weed, and they occupied an acre or two of land, in all parts of it, in the same manner. It was all common, and teams went over it, to the water's edge, in all directions, collecting and depositing their sea-weed and rock-weed in heaps, wheresoever they pleas-

ed. This practice was confined to a small portion of the farmers of Hampton, and the public in general never made any use whatever of this local custom.

The right claimed by a portion of the citizens would not be exchanged by them for the privileges of a highway. The public have only a right of passing over land used as a highway; they have no right of hauling anything upon it, to deposite, nor of taking anything from it. Rock-weed grows upon rocks, and the privileges of a highway over the land in question, would not enable people to take off what grows upon the land. See *State* v. *New-Boston*, 11 N. H. Rep., 409.

But if there were no highway at the Logs, much less could there be any " opposite to, and beyond the Rock," where none but a few straggling teams ever passed—and where, alone, the obstructions were placed.

The alleged highway leads nowhere. Within the memory of man, only one team has ever been known to go around the point.

The town never did any act recognizing the place in dispute as a highway, and the same was never laid out, repaired or fenced.

The travel has changed, always being close to the bank, as the bank has washed away from year to year. The travel has so changed in places, that the privileges of a right of way, and much less of a public highway, could not be gained anywhere.

Woods, J. It is not necessary to consider or discuss the motion to quash the information. Perhaps upon the face of it, there is no uncertainty. The way is described, at the point of complaint, as running " from the Beach road, so called, at a place near the Logs, so called, along the northerly side of said Great Boar's Head, to the easterly point of said Great Boar's Head, which said highway, was, and is, two rods in width, and eighty rods in length." The road then, by this description, properly and legally construed, extends along the extreme northerly border of Great Boar's Head and has the width of two rods. If the evidence descriptive of the road, as found or shown by

the facts of the case, creates any objection, it may well be doubted whether it be not the objection of a variance between the allegations in the information and the proofs. Without pursuing this enquiry, we will proceed directly to the only question deemed important to be considered in deciding this case. That question is, was there a public highway existing at the time, as alleged, from the point " opposite the Large Rock, and extending to the easterly point of Great Boar's Head." The obstructions complained of, according to the case, " were placed opposite to, and easterly of, the Large Rock." The case finds, that at the " Logs," a place westerly of the Large Rock, and extending to a point near it, sea-weed collects ; and the evidence showed that a large number of teams are in the habit of taking sea-weed at the Logs every year, but principally in the fall, winter, and spring, and had done so for more than twenty successive years next preceding the time when the obstructions were caused, of which complaint is made. Seventy-two teams were seen at one time. The " Logs," so called, is an open portion of the beach, fifteen or twenty rods in length, and its width is not given. Whether the use made of the way at the " Logs," was such as to constitute it a public highway, which the town of Hampton were bound to keep in repair, we need not determine. We need not decide upon the effect of many persons going upon the beach with teams, for the purpose of collecting sea-weed, and passing and re-passing freely for such purposes over all parts of the open space by the Granite House, and Fish House, and at the Logs, as furnishing, or not, evidence of a public highway. We need not determine whether the nature of that use is such as to give to the public the ordinary rights acquired and enjoyed in public highways, or whether the easement, if any is acquired, be not of a different character. If this question were important, more facts probably exist, that might aid in arriving at a proper conclusion upon the point. But the evidence in the case tended to show (as to the residue of the alleged way,) that a number of teams, more or less, passed beyond the Rock, along where the obstructions were placed, and so on towards the easterly point of Great Boar's Head, some of them going to the

said point, and in two or three instances, around it. These teams gathered rock-weed principally, but sometimes sea-weed, and drift-wood. This was the fact every year for more than twenty successive years, immediately preceding the time when Nudd placed the obstructions in the alleged highway, though mostly in spring and fall. Wheel ruts were distinguishable along by the Rock for a good portion of the time, but were sometimes covered up by the sand. The distance where the marks of wheels were thus distinguishable, is not exactly settled.

The question is whether here is a way, shown by the public use, at and beyond the Large Rock.

We think the true doctrine upon this subject, is laid down by the late C. J. *Richardson*, in *Barker* v. *Clark*, 4 N. H. Rep., 383 ; " we entertain no doubt," says he " that a highway may be proved by long usage, but a way, to become public, must be used in such a manner as to show that the public accommodation requires it to be a highway, and that it is the intention of the owner of the land to dedicate the way to the public."

The facts, as stated in that case, in reference to which that doctrine was stated, were thus: " in order to show that there was a public highway through the close, the defendant offered to prove that the people in the neighborhood and others had long been accustomed to pass through the close not only on foot, but with teams ; but as he did not offer to prove that the way had ever been opened, or made, or repaired, as a highway, the court rejected the evidence." And the learned Chief Justice, in delivering the judgment of the court said, " in this case there was no evidence that the road was ever opened, or made, or repaired. There was no attempt to offer evidence which showed an intention in the owner of the land to dedicate the way to the public, or that the public convenience required the way."

We regard the facts in that case, as going much farther than those in the present case, to prove a public highway by dedication and use.

In that case the people in the neighborhood, and others, had been accustomed to pass on foot, and with teams through the the close in question for a long time, and it was decided that

that alone was wholly insufficient to prove either a public necessity for the way, or a dedication of the land by the owner.

And we think it entirely clear, that the evidence in the present case, showing only that a " number of teams, more or less, passed beyond the Rock where the obstructions were placed, and so on towards the point, some of them going to the point, and in two or three instances around it, was wholly insufficient to prove a public highway which the town of Hampton was bound to keep in repair. Here, it may well be said, that no public use was made of the alleged way. At most, it was shown that a few teams passed the Rock, mostly in spring and fall, to procure rock-weed, and sometimes sea-weed, and drift-wood. Here was no such use as would reasonably inform the owner, of a public claim of a right of way in his land, or of a public use, or of any necessity in the public for such use. And short of that use, we think no inference of an intention on the part of the owner, to dedicate it to the public, could legally be inferred. The use made of the way, such as it was, was very trifling, and in fact, for nearly the entire way beyond the Rock, the way was incapable of any such use, for such a length of time as would evidence a public necessity for it, or show a dedication by the owner.

In the case of *Barker* v. *Clark*, an uninterrupted use, for a long time, by the people in the neighborhood, and others for general purposes, was shown, and yet it was holden not to prove a public necessity for the way, or an acceptance of it by the public, or a dedication by the owner. In the present case, it appears, that a few individuals only, made any use of the way, and that only at specified seasons of the year, and for special purposes.

Most of the way, there were no wheel or other marks, to indicate the course of travel, and at the Rock even, a portion of the time, no mark of travel could be seen. And at many points the course of travel, such as it was, changed from time to time, as often as the waters washed away the soil over which it passed, which occurred frequently. The use made of the way was private in its character, and not general; was trifling in amount, and at most, only occasional, at particular seasons of the year.

Such a use would certainly furnish no evidence of a public necessity for a road, and consequently, none of a dedication to such use is to be inferred from the public use and necessity.

And we have not been able to find a case, and we think no case can be found, where such a use alone appeared as is here shown, aside from any laying out of the way, or repairs, or other recognition of it by the public authorities, that gives the least countenance to the idea that the use shown furnishes sufficient or competent evidence of the existence of a public highway.

It would be a monstrous and intolerable doctrine, that would compel towns to keep such a way in repair, and to respond in damages for delinquencies therein.

Repairs at many points would be impossible, while at the same time the public has no occasion for the way, but, at most, only a few straggling teams of such persons, and those only a few, as would resort to the beach occasionally, for the mere private purpose of collecting rock-weed.   Besides, what is shown to let the public officers know where to repair, or the owner of the land, what part of his land is claimed as a public easement, and as being dedicated by him to the public?

It is well settled, that even an uninterrupted and constant use of a way for twenty years, is not conclusive evidence of a right *Pritchard* v. *Atkinson,* 4 N. H. Rep., 9, 12.

The facts in the case of *State* v. *Bartlett,* decided by this court, in this county, at July term, 1846, clearly distinguish that case from the present.  In that case, for more than fifty years, there had been a travelled path, used during that period, by the owners of four several tracts of land, by which it passed, for the purpose of passing with their teams to and from their fields, three of whom had no other means of access to those fields; and it was also much used by pleasure conveyances, and persons resorting to the beach, and was connected with the road leading from New-Castle village to Fort Constitution, and the travel uniformly passed along the same track.  Here was a way, then, clearly marked by travel; a path much used for more than fifty years by the public, and in a manner clearly showing a public necessity; and a dedication of it to the public, by the owners of the

land.   Such a use could not fairly be presumed to be for such a length of time, without a knowledge of the owner of the land, and his acquiescence in the use, and without such a public necessity as would amount to a dedication of it to the public for that purpose.

On the whole, upon the facts reported, we think the information cannot be sustained ; that the verdict should be set aside, and a

*New trial granted.*